IN THE UNITED STATES DISTRICT COURT

THE EASTERN DISTRICT OF WISCONSIN

DANNY L. WILBER,

    *Plaintiff's*

Case No. **21-C-0521**

v.

BRIAN FOSTER, Warden

DR. JEFFREY C. MANLOVE, M.D.,

CHRYSTAL MELI formerly MERCHANT, (HSM)

GWENDOLYN A. VICK, R.N., ANN YORK, R.N.,

MARK JENSEN, R.N.,

AND W.C.I. RECREATION &

MAINTENANCE DEPTS. JOHN & JANE DOE.

    *Defendants.*

**JURY TRIAL DEMANDED**



## COMPLAINT

**NOW COMES** Plaintiff, DANNY WILBER, pro-se, complains against the above-named Defendants, and for his claims for relief, states and shows to the court as follows:

### INTRODUCTION

1. This is an action under 42 U.S.C. Section 1983 to redress the deprivation under color of law Plaintiff's rights as secured by the EIGHTH and FOURTEENTH AMENDMENT of the United States Constitution, and State law claims for negligence and indemnification.

### JURISDICTION AND VENUE

2. This court has jurisdiction of the action pursuant to 28 U.S.C. Section 1331 and for the state claim of negligence and indemnification pursuant to 28 U.S.C. Section 1367.

### PARTIES

3. Plaintiff DANNY L. WILBER, pro-se, who is currently imprisoned at Kettle Moraine Correctional Institution. Plaintiff is not well-versed in civil law and respectfully request that complaint be read generously.

1

4.     Defendant Brian Foster is the Warden of Waupun Correctional Institution. In this capacity he oversees Waupun Correctional Institution in its entirety. Brian Foster who is and was relevant to this action is employed by the Wisconsin Department of Corrections, acting under the color of law and within the scope of his employment. Brian Foster is sued in his individual and official capacity.

5.     Defendant Dr. Jeffrey Manlove, M.D. ("Dr. Manlove") is a Doctor. Dr. Manlove is employed by the Wisconsin Department of Corrections and is currently staffed at Waupun Correctional Institution at the Health Service Unit (HSU). Acting under the color of law and within the scope of his employment he has the legal responsibility of providing adequate medical care to inmates. Dr. Manlove is sued in his individual and official capacity.

6.     Defendant Chrystal Meli formerly Marchant HSU Manager ("Meli") is a Registered Nurse (RN). Meli is employed by the Wisconsin Department of Corrections and is currently staffed at Waupun Correctional Institution as the Health Service Unit (HSU) Manager. In that capacity she oversees the prisons Health Service Unit. Acting under the color of law and within the scope of her employment she has the legal responsibility of providing adequate medical care to inmates. Meli is sued in her individual and official capacity.

7.     Defendant Gwendolyn A. Vick ("Vick"), is a Registered Nurse (RN). Vick is employed by the Wisconsin Department of Corrections and is currently staffed at Waupun Correctional Institution at the Health Service Unit (HSU). Acting under the color of law and within the scope of her employment she has the legal responsibility of providing adequate medical care to inmates. Vick is sued in her individual and official capacity.

8.     Defendant Ann York ("York"), is a Registered Nurse (RN). York is employed by the Wisconsin Department of Corrections and is currently staffed at Waupun Correctional Institution at the Health Service Unit (HSU). Acting under the color of law and within the scope of her employment she has the legal responsibility of providing adequate medical care to inmates. York is sued in her individual and official capacity.

9.     Defendant Mark Jensen ("Jensen") Jensen is employed by the Wisconsin Department of Corrections and is currently staffed at Waupun Correctional Institution at the Health Service Unit (HSU). Acting under the color of law and within the scope of her employment she has the legal responsibility of providing adequate medical care to inmates. Jensen is sued in her individual and official capacity.

10.    Defendants John & Jane Doe (Recreation and Maintenance Depts.) are employed by the Wisconsin Department of Corrections. Acting under the color of law and within the scope of their employment has the legal responsibility for the proper upkeep and maintenance of prison workout equipment. John & Jane Doe is sued in their individual capacity.

## FACTS

11.    On April 21, 2018, Plaintiff Wilber was attending recreation at the prisons' "big top rec area."

12. Plaintiff Wilber was doing standard exercise pull-ups on the prison universal workout station.

13. While doing these standard exercise pull-ups, the two (2) bolts stabilizing the 30-40 lb. pull-up bar to the universal work station snapped simultaneously striking Plaintiff Wilber in the nose and face. Thus causing Plaintiff Wilber excruciating pain and obvious substantial facial and nose injuries, (i.e. bleeding, laceration on bridge of nose, instant swelling, and bruising).

14. Plaintiff was immediately escorted to the prisons Health Service Unit, herein (H.S.U.), so that prison medical staff could assess the severity of Plaintiff's facial and nose injuries and render adequate medical care/treatment accordingly.

15. Plaintiff was seen by Vick (R.N.).

16. Despite Plaintiff's obvious substantial facial and nose injuries and plaintiff's repeated pleads for x-rays to ascertain the full extent of plaintiff's injuries.

17. Vick (R.N.) issued Plaintiff a "medical ice bag" some ibuprofen and Plaintiff was sent back to cell hall.

18. On April 23, 2018, a follow-up was conducted by Jensen (R.N.) on Plaintiff's injuries.

19. No medical treatment was provided to Plaintiff at this time.

20. On April 30, 2018, Plaintiff submitted a Health Service Request herein ("HSR") seeking medical treatment due to experiencing excruciating pain and difficulty breathing out of nose.

21. On May 02, 2018, Plaintiff received response from Jensen (R.N.) indicating "Nursing Sick Call."

22. No medical treatment was provided to Plaintiff at this time.

23. On May 03, 2018, a follow-up was conducted by Jensen (R.N.) on Plaintiff's face and nose injuries.

24. Despite obvious injuries to Plaintiff's face and nose and constant complaints of excruciating pain Plaintiff was issued nasal spray.

25. No medical treatment was provided to Plaintiff at this time.

26. On May 10, 2018, a follow-up on Plaintiff's injuries was conducted by York (R.N.).

27. York (R.N.) documented Plaintiff's obvious nose injuries and concluded the follow-up.

28. No medical treatment was provided to Plaintiff at this time.

29. On May 21, 2018, Plaintiff submitted a H. S. R. seeking medical treatment due to experiencing excruciating pain and difficulty breathing out of nose.

30. On May 22, 2018, Plaintiff received response from Jensen (R.N.) indicating "Nursing Sick Call."

31. No medical treatment was provided to Plaintiff at this time.

32. On May 25, 2018, over 30 days after Plaintiff suffered substantial nose and face injuries was Plaintiff seen by the prison doctor Dr. Manlove and X-Rays ordered to be taken on Plaintiff's nose and face.

34. On May 25, 2018, "Prescriber's Orders Form DOC-3023" Dr. Manlove noted: "X-Rays Nasal Bones-Blunt trauma." Which was then signed off on by Vick (R.N.).

35. On May 31, 2018, a follow-up was conducted by Jensen (R.N.). Jensen (R.N.) stated that Plaintiff "was seen by the MD about this since then [May 25, 2018] & does not need to see the RN today."

36. No medical treatment was provided to Plaintiff at this time.

37. On June 06, 2018, now over 45 days since Plaintiff suffered substantial nose and face injuries and repeated request to HSU for medical treatment due to excruciating pain and difficulty breathing out of nose was Plaintiff given X-rays on on face and nose.

38. On June 06, 2018, "Prescriber's Orders Form DOC-3023 notes: "CT facial bones R/O facial [fx?] ASAP." Said order was signed off on twice by [illegible] signatures.

39. X-rays came back positive for facial bone fractures. Plaintiff did in fact suffer " Fracture base of the nasal bones."

40. Radiologist Dr. James Collins, M.D./LE "CT recommended for further evaluation."

41. On June 11, 2018, Plaintiff submitted a HSR requesting a copy of X-ray results.

42. On June 12, 2018, now over 50 days after Plaintiff suffered substantial nose and face injuries was Plaintiff transported to the area hospital for a "scheduled" CT scan on face.

43. The CT scan performed by Dr. Allen E. Chantelois, M.D. revealed, "There is a fracture of the nasal bones with *slight leftward displacement of the fracture fragments.*"

44. On June 14, 2018 Plaintiff submitted a H.S.R. requesting copies of both the X-ray and CT scan results.

45. On June 15, 2018 Plaintiff received HSR receipt indicating " refer for copies only."

46. On June 21, 2018 Plaintiff was seen by Dr. Manlove regarding results of both X-rays and CT scan.

47. Dr. Manlove, acknowledge Plaintiff did, in fact, suffer a broken nose.

48. However, despite these confirmations of a major nose injury, Dr. Manlove only treated Plaintiff for a "sinus infection."

49. No medical treatment was provided to Plaintiff at this time despite the pain and suffering he was experiencing due to broken nasal bones.

50. Dr. Manlove, also indicated to Plaintiff "we normally don't do anything about broken noses other then give them time to heal."

4

51. On June 21, 2018 Plaintiff submitted H.S.R. again requesting copy of X-ray results.

52. On June 22, 2018 Plaintiff received copy of radiology report signed off on by Radiologist Dr. James Collins, M.D./LE.

53. On July 16, 2018 Plaintiff submitted a H.S.R. indicating that "Pain and difficulty breathing still persist and I would like to be seen."

54. On July 17, 2018 Jensen (R.N.) responded with "Dr. Manlove next week."

55. No medical treatment was rendered to Plaintiff at this time.

56. On July 20, 2018 Plaintiff was seen by Dr. Manlove.

57. No medical treatment was rendered to Plaintiff at this time.

58. On July 20, 2018 Dr. Manlove noted in his "Clinic Notes" that: "The patient underwent x-rays of the nasal bones which confirmed a fracture and a subsequent CT scan showed a fracture of the nasal bones with associated mucosal thickening in the ethmoid and maxillary sinuses." Dr. Manlove also noted "There was a slight leftward displacement of the fracture fragments and [t]he patient will be sent for consultation with otolaryngology for further evaluation."

59. On September 06, 2018 Plaintiff submitted a H.S.R. stating that "[his] nose was broken in "April" and the [he] is having "difficulty breathing." Plaintiff also stated that "[he] would like to see a nose doctor because this is causing me concern."

60. On September 08, 2018 Vick (R.N.) responded "appointment with specialist being arranged."

61. Despite having sustained broken nasal bones and experiencing pain and difficulty breathing no medical treatment was rendered to Plaintiff at this time.

62. On October 17, 2018 Plaintiff a H.S.R. complaining about the pain his fracture nose was causing him and his difficulty breathing and requested to be seen as soon as possible.

63. On October 18, 2018 Taplin (R.N.) responded "f/u appt. with ACP scheduled."

64. Despite having sustained broken nasal bones and experiencing pain and difficulty breathing almost 180 days ago no medical treatment was rendered to Plaintiff at this time.

65. On November 02, 2018 Plaintiff submitted a H.S.R. to Health Service Unit Manager Chrystal Meli formerly Merchant inquiring about the 47 day delay in ordering X-rays on Plaintiff's face & nose despite obvious substantial injuries.

66. On November 03, 2018 Plaintiff's H.S.R. was "referred to HSU Manager" by illegible signature.

67. Despite having sustained broken nasal bones and experiencing pain and difficulty breathing over 180 days ago no medical treatment was rendered to Plaintiff at this time.

5

68. On November 08, 2018 Meli responded by simply citing the dates in which Plaintiff was seen prior to X-rays being ordered.

69. On November 08, 2018 Plaintiff submitted a H.S.R. asking for the names of the medical care providers that [he] was seen by regarding [his] broken nose.

70. On November 09, 2018 Jensen (R.N.) refused to provide Plaintiff with names instead he indicated "Then you need to do a chart review and look it up."

71. On December 04, 2018 Plaintiff submitted a H.S.R. to HSU Manager Meli stating: "would you please tell me why I have not been sent to see the ENT Specialist for my broken nose yet? It has been over 225 days since my nose was broken. I am in pain and have a hard time breathing."

72. On December 06, 2018 over 200 days since Plaintiff sustained broken nose and nasal bones, numerous request to HSU about experiencing pain and difficulty breathing was Plaintiff sent to UW-Health to be seen by a ENT- Specialist.

73. On December 06, 2018 Dr. Chad Ennis primary diagnosis of Plaintiff's nose: "Nasal obstruction secondary to inf nasal valve collapse, septal deviation and inferior turbinate hyper trophy."

74. On December 06, 2018 Dr. Scott R. Chaiet, M.D. Physical examination of Plaintiff's nose revealed numerous injuries that required surgery to repair.

75. Dr. Scott R. Chaiet recommended "functional rhinoplasty surgery with nasal none osteotomies, septoplasty, and repair of the collapsed left nasal valve with endonasal spreader graft placement."

76. On December 10, 2018 Plaintiff submitted a H.S.R. requesting copies of UW-Health findings.

77. On January 02, 2019 Plaintiff submitted a H.S.R. stating "I am still having difficulty breathing."

78. On January 04, 2019 Jensen (R.N.) responded " you have Flutidsone Nasal Spray it is for congestion and can still breath through your mouth. Discuss with your doctor at appt."

79. No medical treatment was rendered to Plaintiff at this time.

80. On February 18, 2019 over 300 days since Plaintiff sustained substantial nose and face injuries Plaintiff's was again transported to UW-Health.

81. On February 18, 2019 Plaintiff underwent major surgery (i.e. Septorhinoplasty, Inferior turbinate reduction, and nasal valve placement), to repair his damaged nose and relieve him of the suffering his obvious injuries were causing him.

82. On February 27, 2019 Plaintiff was transported to UW-Health for post-surgery follow up.

83. On March 21, 2019 Plaintiff was transported to UW-Health for post-surgery follow up.

84. On May 16, 2019 Plaintiff was transported to UW-Health for post-surgery follow up.

## COUNT I- 42 U.S.C. Section 1983

## EIGHTH AMENDMENT: DELIBERATE INDIFFERENCE, DELAYED, INADEQUATE MEDICAL CARE TO AN OBVIOUS SUBSTANTIAL FACIAL INJURY AND FOURTEENTH AMENDMENT: EQUAL PROTECTION

85. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

86. A broken nose is a serious injury and permanent harm could result absent proper evaluation, possible realignment, and immediate medical care.

87. Since sustaining and being diagnosed with Nasal obstruction secondary to inf nasal valve collapse, septal deviation and inferior turbinate hypertrophy Plaintiff sought medical treatment from above named defendants for said injury and complications (i.e. pain, suffering, and distress, difficulty breathing) on more than six occasions over a 9 month timespan.

88. Despite Plaintiff's numerous "follow-up" visits to HSU, the above named defendants utterly failed to render adequate medical treatment to Plaintiff's substantial facial injuries and/or relieve him of his pain, suffering, and distress.

89. The above named defendants were deliberately indifferent to Plaintiff's obvious substantial facial injuries and simply refused or delayed to render adequate medical treatment.

90. This unreasonable delay led to Plaintiff's fracture to deform in "slight leftward displacement of fracture fragment which ultimately led to Plaintiff having to undergo major surgery to repair damaged nose.

91. Despite both Plaintiff and his significant other adamant pleads with Vick (R.N.) for X-ray's to be taken to ascertain the extent of facial injuries.

92. It was not until May 25, 2018 were X-rays ordered. Over a month after the Plaintiff sustained obvious substantial facial injuries.

93. It was deliberate indifference for Dr. Manlove not to render Plaintiff with adequate medical care before and/or after x-ray results revealed Plaintiff did, in fact, suffer from a broken nose.

94. It was deliberate indifference for Dr. Manlove to delay ordering x-rays to be done on Plaintiff's face until over a month after Plaintiff suffered obvious substantial facial injuries.

95. It was deliberate indifference for Dr. Manlove, to acknowledge Plaintiff did, in fact, suffer a broken nose and only treated Plaintiff for a "sinus infection."

96. It was deliberate indifference for Dr. Manlove to indicate to Plaintiff "we normally don't do anything about broken noses other then give them time to heal."

97. All persons involved have in some way, either participated in the delay and denial of adequate medical care, or facilitated the constitution of the delay and denial of adequate medical care as a result of deliberate indifference and/or willful negligence in performing their job duties.

98. Defendants actions or lack thereof demonstrate a clear showing of deliberate indifference that rose to a level of cruel and unusual in violation of plaintiff's Eighth and Fourteenth Amendment rights under the United States Constitution.

## A. PLAINTIFF'S OBVIOUS SUBSTANTIAL NOSE AND FACE INJURIES

99. Each paragraph in this complaint is incorporated as if restated fully herein.

100. X-ray images confirmed Plaintiff did in fact suffer "Fracture base of the nasal bones."

101. The CT scan performed by Dr. Chantelois, M.D. revealed, "There is a fracture of the nasal bones with slight leftward displacement of the fracture fragments."

102. Dr. Manlove noted in his "Clinic Notes" that: "The patient underwent x-rays of the nasal bones which confirmed a fracture and a subsequent CT scan showed a fracture of the nasal bones with associated mucosal thickening in the ethmoid and maxillary sinuses."

103. Dr. Manlove also noted "There was a slight leftward displacement of the fracture fragments and [t]he patient will be sent for consultation with otolaryngology for further evaluation."

104. Dr. Chad Ennis primary diagnosis of Plaintiff's nose: "Nasal obstruction secondary to inf nasal valve collapse, septal deviation and inferior turbinate hypertrophy."

105. Dr. Scott R. Chaiet, M.D. UW-Health Otolaryngology Assessment Report
EXAMINATION:

Physical examination today reveals a nose with *obvious* deviation of the nasal dorsum to the patient's right with widened out-fractured right bone. There is bilateral flattening with open roof deformity (due to the frontal impact of trauma). Palpation of the nose reveals the septum deviated to the right especially inferiorly. . . Mucosal examination showed significant turbinate hypertrophy (Emphasis added).

## B. PLAINTIFF'S REPEATED PLEADS TO HEALTH SERVICE UNIT (HSU) FOR MEDICAL TREATMENT FOR OBVIOUS SUBSTANTIAL FACIAL INJURIES AND DEFENDANT'S DELAYING OR FAILING TO RENDER TREATMENT

106. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

107. On April 30, 2018, Plaintiff submitted a Health Service Request herein ("HSR") seeking medical treatment due to experiencing excruciating pain and difficulty breathing out of nose.

108. On May 02, 2018, Plaintiff received response from Jensen (R.N.) indicating "Nursing Sick Call."

109. On May 03, 2018, a follow-up was conducted by Jensen (R.N.) on Plaintiff's face and nose injuries.

110. Despite obvious injuries to Plaintiff's face and nose and constant complaints of excruciating pain Jensen (R.N.) issued Plaintiff nasal spray.

8

111. On May 10, 2018, a follow-up on Plaintiff's injuries was conducted by York (R.N.). York (R.N.) documented Plaintiff's obvious nose injuries and concluded the follow-up.

112. On May 21, 2018, Plaintiff submitted a H. S. R. seeking medical treatment due to experiencing excruciating pain and difficulty breathing out of nose.

113. On May 22, 2018, Plaintiff received response from Jensen (R.N.) indicating "Nursing Sick Call."

114. On May 25, 2018, over 30 days after Plaintiff suffered substantial nose and face injuries was Plaintiff seen by the prison doctor Dr. Manlove and X-Rays ordered to be taken on Plaintiff's nose and face.

115. On May 25, 2018, "Prescriber's Orders Form DOC-3023" Dr. Manlove noted: "X-Rays Nasal Bones-Blunt trauma." Which was then signed off on by Vick (R.N.).

116. On May 31, 2018, a follow-up was conducted by Jensen (R.N.). Jensen (R.N.) stated that Plaintiff "was seen by the MD about this since then [May 25, 2018] & does not need to see the RN today."

117. On June 06, 2018, now over 45 days since Plaintiff suffered substantial nose and face injuries and repeated request to HSU for medical treatment due to excruciating pain and difficulty breathing out of nose was Plaintiff given X-rays on on face and nose.

118. On June 06, 2018, "Prescriber's Orders Form DOC-3023 notes: "CT facial bones R/O facial [fx?] ASAP." Said order was signed off on twice by [illegible] signatures.

119. On June 11, 2018, Plaintiff submitted a HSR requesting a copy of X-ray results.

120. On June 12, 2018, now over 50 days after Plaintiff suffered substantial nose and face injuries was Plaintiff transported to the area hospital for a "scheduled" CT scan on face.

121. On June 14, 2018 Plaintiff submitted a H.S.R. requesting copies of both the X-ray and CT scan results.

122. On June 15, 2018 Plaintiff received HSR receipt indicating " refer for copies only."

123. On June 21, 2018 Plaintiff was seen by Dr. Manlove regarding results of both X-rays and CT scan.

124. Dr. Manlove, acknowledge Plaintiff did, in fact, suffer a broken nose. However, despite these confirmations of a major nose injury, Dr. Manlove only treated Plaintiff for a "sinus infection." No medical treatment was provided to Plaintiff at this time despite the pain and suffering he was experiencing due to broken nasal bones.

125. Dr. Manlove also indicated to Plaintiff "we normally don't do anything about broken noses other then give them time to heal."

126. On June 21, 2018 Plaintiff submitted H.S.R. again requesting copy of X-ray results.

127. On July 16, 2018 Plaintiff submitted a H.S.R. indicating that "Pain and difficulty breathing still persist and I would like to be seen."

9

128. On July 17, 2018 Jensen (R.N.) responded with "Dr. Manlove next week."

129. On July 20, 2018 Plaintiff was seen by Dr. Manlove.

130. On July 20, 2018 Dr. Manlove noted in his "Clinic Notes" that: "The patient underwent x-rays of the nasal bones which confirmed a fracture and a subsequent CT scan showed a fracture of the nasal bones with associated mucosal thickening in the ethmoid and maxillary sinuses." Dr. Manlove also noted "There was a slight leftward displacement of the fracture fragments and [t]he patient will be sent for consultation with otolaryngology for further evaluation."

131. On September 06, 2018 Plaintiff submitted a H.S.R. stating that "[his] nose was broken in "April" and the [he] is having "difficulty breathing." Plaintiff also stated that "[he] would like to see a nose doctor because this is causing me concern."

132. On September 08, 2018 Vick (R.N.) responded "appointment with specialist being arranged."

133. On October 17, 2018 Plaintiff a H.S.R. complaining about the pain his fracture nose was causing him and his difficulty breathing and requested to be seen as soon as possible.

134. On October 18, 2018 Taplin (R.N.) responded "f/u appt. with ACP scheduled."

135. On November 02, 2018 Plaintiff submitted a H.S.R. to Health Service Unit Manager Chrystal Meli formerly Merchant inquiring about the 47 day delay in ordering X-rays on Plaintiff's face & nose despite obvious substantial injuries.

136. On November 03, 2018 Plaintiff's H.S.R. was "referred to HSU Manager" by illegible signature.

137. Despite having sustained broken nasal bones and experiencing pain and difficulty breathing over 180 days ago no medical treatment was rendered to Plaintiff at this time.

138. On November 08, 2018 Meli responded by simply citing the dates in which Plaintiff was seen prior to X-rays being ordered.

139. On November 08, 2018 Plaintiff submitted a H.S.R. asking for the names of the medical care providers that [he] was seen by regarding [his] broken nose.

140. On November 09, 2018 Jensen (R.N.) refused to provide Plaintiff with names instead he indicated "Then you need to do a chart review and look it up."

141. On December 04, 2018 Plaintiff submitted a H.S.R. to HSU Manager Meli stating: "would you please tell me why I have not been sent to see the ENT Specialist for my broken nose yet? It has been over 225 days since my nose was broken. I am in pain and have hard time breathing."

142. On December 06, 2018 over 225 days since Plaintiff sustained broken nose and nasal bones, numerous request to HSU about experiencing pain and difficulty breathing was Plaintiff sent to UW-Health to be seen by a ENT- Specialist.

143. On December 10, 2018 Plaintiff submitted a H.S.R. requesting copies of UW-Health findings.

144. On January 02, 2019 Plaintiff submitted a H.S.R. stating "I am still having difficulty breathing."

145. On January 04, 2019 Jensen (R.N.) responded " you have Flutidsone Nasal Spray it is for congestion and can still breath through your mouth. Discuss with your doctor at appt."

## C. PLAINTIFF'S OBVIOUS SUBSTANTIAL NOSE AND FACE INJURIES REQUIRED MAJOR SURGERY TO REPAIR

146. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

147. Plaintiff suffered a substantial nose injury that required major surgery (i.e. Septorhinoplasty, Inferior tubinate reduction, and nasal valve placement) to repair the deformity - leftward displacement of the fracture fragments that came as a result of delayed medical treatment by defendants and to repair damaged nose in general.

148. Dr. Chad Ennis primary diagnosis of Plaintiff's nose: "Nasal obstruction secondary to inf nasal valve collapse, septal deviation and inferior turbinate hypertrophy."

149. Dr. Chad Ennis recommended surgery.

150. Dr. Scott R. Chaiet, M.D. UW-Health Otolaryngology Assessment Report
EXAMINATION:

Physical examination today reveals a nose with *obvious* deviation of the nasal dorsum to the patient's right with widened out-fractured right bone. There is bilateral flattening with open roof deformity (due to the frontal impact of trauma). Palpation of the nose reveals the septum deviated to the right especially inferiorly. . . Mucosal examination showed significant turbinate hypertrophy (Emphasis added).

151. Dr. Scott R. Chaiet, M.D. also recommended "functional rhinoplasty surgery with nasal bone osteotomies, septoplasty, and repair of the collapsed left nasal valve with endonasal spreader graft placement."

## D. PLAINTIFF HAD TO UNDERGO MAJOR SURGERY TO REPAIR DAMAGED NOSE

152. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

153. On February 18, 2019 over 300 days since Plaintiff sustained substantial nose and face injuries Plaintiff's was again transported to UW-Health.

154. On February 18, 2019 Plaintiff underwent major surgery (i.e. Septorhinoplasty, Inferior turbinate reduction, and nasal valve placement), to repair his damaged nose and relieve him of the suffering his obvious injuries were causing him.

## E. POST- SURGERY MEDICATION DENIED BY HSU

155. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

156. On February 18, 2019 Plaintiff underwent major nose surgery.

157. Per ENT- Specialist Orders Plaintiff was issued Saline Nasal Spray.

158. Plaintiff was ordered to use said spray every 4-6 hours or AS NEEDED, to keep nasal passages clean, moist, to avoid infection, and as an aid in healing.

159. On February 25, 2019 Plaintiff submitted a Refill form requesting a refill of said spray.

160. On February 27, 2019 Plaintiff's request for refill was denied indicating "Requested too soon."

161. On March 3, 2019 Plaintiff was finally issued a refill of said spray by H.S.U..

162. Plaintiff had to go six days without said spray which resulted in Plaintiff having excessive crusting, extreme dryness, and pain in nose. These conditions had the potential of prolonging Plaintiff's healing and made him more susceptible to infection.

163. Thus ENT-Specialist orders were not followed and Plaintiff was denied the proper medical care conductive to Plaintiff's healing and recovery from major nose surgery.

164. Plaintiff felt this denial of post-surgery medication was retaliatory in nature due to the fact Plaintiff has been persistent, and has filed several inmate complaints against H.S.U. personnel, in his pursuit of adequate medical care for substantial obvious nose injuries.

## COUNT II- NEGLIGENCE

### A. HSU PERSONNEL

165. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

166. Despite Plaintiff's obvious substantial facial injuries(i.e. laceration on bridge of nose, profuse nose bleed, instant swelling of nose and eyes, excruciating pain, lightheadedness, and repeated pleads for x-rays to ascertain the full extent of injuries.

167. Vick (R.N.) issued Plaintiff a " medical ice bag" some ibuprofen and sent him back to the cell hall.

168. It was negligence for the above named defendants not to render adequate medical care to Plaintiff for his obvious facial injuries or at the very least ascertain the extent of Plaintiff's injuries via x-rays or immediately referring him to a specialist who could have rendered medical care accordingly.

169. It was negligence for Dr. Manlove not to render Plaintiff with adequate medical treatment before and/or after x-ray results revealed Plaintiff did, in fact, suffer from a broken nose.

170. It was negligence for Dr. Manlove to delay ordering x-rays to be done on Plaintiff's face until over a month after Plaintiff suffered obvious substantial facial injuries. This unreasonable delay caused fracture to deform in "slight leftward displacement of fracture fragments."

12

171. It was negligence for Dr. Manlove, to acknowledge Plaintiff did, in fact, suffer a broken nose and only treated Plaintiff for a "sinus infection."

172. It was negligence for Dr. Manlove to indicate to Plaintiff "we normally don't do anything about broken noses other then give them time to heal."

173. It was negligence for Dr. Manlove to delay ordering x-rays until May 25, 2018, over a month after Plaintiff suffered obvious substantial facial injuries.

174. This unreasonable delay prevented Medical personnel from finding out the extent of plaintiff's obvious injuries and treating the injuries accordingly. This unreasonable delay caused fracture to deform in "slight leftward displacement of fracture fragments." These were major factors in Plaintiff's pain, suffering, and distress.

### B. WAUPUN PRISON RECREATION & MAINTENANCE DEPTS.

175. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

176. It is the Recreation/ Maintenance Department Staff employee(s) duty and within the scope of their employment to maintain the upkeep of prison workout equipment and conduct routine maintenance checks to ensure safety in the utilization of said equipment.

177. Plaintiff complaints that the only way that two (2) bolts could have broke simultaneously was due to either:

- Negligence and/or reckless maintenance and/or inspection;
- Failure to conduct routine and/or maintenance checks on prison workout equipment by both prison recreation and maintenance department employee(s);
- Negligent and/or reckless installation;
- Negligent and/or reckless choice of bolts and/or torque on bolts causing equipment to malfunction while being utilized;

178. While doing basic pull-ups the pull-up bar snapped off it's foundation striking Plaintiff.

179. As a direct result of negligence of the Recreation & Maintenance Department in their duty to properly upkeep Prison work-out equipment, the Plaintiff was seriously injured.

180. The Plaintiff suffered a obvious substantial nose fracture in consequence of the careless, defective, and negligent condition of workout equipment.

### COUNT III INDEMNIFICATION

181. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

182. Wisconsin law, Wisconsin Stat. Section 895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

13

183. At all times relevant herein, the Defendants were employees of the Wisconsin Department of Correction, who acted within the scope of their employment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, DANNY L. WILBER, respectfully prays that this honorable Court enter a judgment in his favor according to the law which applies and against the Defendants W.C.I. Warden BRIAN FOSTER, Health Service Manager CHRYSTAL MELI, formerly MERCHANT, DR. JEFFREY C. MANLOVE, M.D., GWENDOLYN A. VICK, (R.N.), ANN YORK, (R.N.), MARK JENSEN, (R.N.), AND JOHN & JANE DOE W.C.I. RECREATION & MAINTENANCE DEPTS. awarding compensatory damages, attorney's fee and costs against each Defendant, punitive damages against each of the individual Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Danny Wilber hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated at Plymouth, Wisconsin this 16th day of April, 2021.

RESPECTFULLY SUBMITTED,

*Danny W Wilber*

Danny L. Wilber #285482

Kettle Moraine Correctional Inst.

P.O. Box 282

Plymouth, Wisconsin 53073

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

14

## CERTIFICATION OF INMATE MAILING

I, the undersigned, hereby declare under the penalty of perjury that I placed the following:

- Cover letter to the Office of the Clerk of the United States District Court Eastern District
- 42 U.S.C. Section 1983 Civil Complaint
- Certification of Inmate Mailing

in the Unit 15 mailbox to be sent to the institution business office so that a check in the amount of $402.00 can be cut to be mailed to the Clerk of United States District Court of Wisconsin - Eastern District on _10th_ day of _April_, 2021.

_Danny Wilber_

Danny Wilber #285482

Kettle Moraine Correctional Inst.

P.O. Box 282

Plymouth, Wisconsin 53073