UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DANNY L. WILBER,

        Plaintiff,

        v.                              Case No. 21-C-521

BRIAN FOSTER,
JEFFREY MANLOVE,
CHRYSTAL MELI,
GWENDOLYN VICK,
ANN YORK,
MARK JENSEN, and
JOHN/JANE DOE,

        Defendants.

---

## SCREENING ORDER

---

Danny L. Wilber, who is currently serving a state prison sentence at Kettle Moraine Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court to screen the complaint.[1]

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a

---

[1] On April 23, 2021, Wilber paid $400 toward the filing fee, presumably unaware that the filing fee was recently raised to $402. Consistent with the letter from the clerk's office, Dkt. No. 2, Wilber should pay the remaining $2.00 as soon as possible.

defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Wilber asserts that, on April 21, 2018, the pull-up bar he was using during recreation broke and hit him in the face. Dkt. No. 1 at 3. Wilber suffered "excruciating pain and obvious substantial facial and nose injuries (i.e., bleeding, laceration on bridge of nose, instant swelling, and bruising)." *Id.* Wilber was taken to health services and evaluated by Defendant Gwendolyn Vick,

2

who gave him a medical ice bag and some ibuprofen and sent him back to his cell. *Id.* Defendant Mark Jensen evaluated Wilber's injuries a couple days later, but allegedly provided no additional medical treatment. *Id.*

During the next several weeks, Wilber submitted health service requests explaining that he was "experiencing pain and difficulty breathing out of [his] nose." Dkt. No. 1 at 3. Wilber was seen by Jensen and Defendant Ann York. *Id.* Jensen provided nasal spray, but no other treatment was offered. *Id.* About a month after the incident, Wilber was seen by Defendant Dr. Jeffrey Manlove, who ordered x-rays of Wilber's nose and face, which were performed on June 6, 2018. *Id.* at 4. Wilber continued to complain of pain and difficulty breathing. *Id.* According to Wilber, the x-rays showed facial bone fractures, and the radiologist recommended a CT scan for further evaluation. *Id.* About a week later, on June 12, 2018, Wilber was taken to an area hospital for a CT scan, which revealed "a fracture of the nasal bones with slight leftward displacement of the fracture fragments." *Id.*

Wilber was seen by Dr. Manlove to review the results of the x-rays and CT scan on June 21, 2018. Dkt. No. 1 at 4. Dr. Manlove allegedly told Wilber that, "we normally don't do anything about broken noses other th[a]n give them time to heal." *Id.* Wilber states he was treated only for a sinus infection. *Id.*

During the next month, Wilber continued to complain of pain and difficulty breathing. Dkt. No. 1 at 5. On July 20, 2018, Dr. Manlove evaluated Wilber and noted that he would "be sent for consultation with otolaryngology for further evaluation." *Id.* Wilber asserts that, over the next couple of months, he complained that he was experiencing pain and difficulty breathing but no medical treatment was provided; he was merely informed that an appointment with a specialist was being arranged. *Id.*

Wilber wrote Defendant Chrystal Meli, inquiring about the delay in ordering x-rays, but she only responded with the dates that Wilber had been seen in health services. Dkt. No. 1 at 5. On December 4, 2018, Wilber again wrote to Meli asking why he had not yet been sent to the specialist. *Id*. at 6. Two days later, on December 6, 2018, Wilber was sent to UW-Health to be seen by an ENT specialist. *Id.* The ENT identified "numerous injuries that required surgery to repair." *Id.* Wilber continued to complain of pain and difficulty breathing and was told to use nasal spray for congestion and to breath through his mouth. *Id.*

On February 18, 2019, Wilber underwent surgery at UW-Health. Dkt. No. 1 at 6. According to Wilber, he was prescribed saline nasal spray after the surgery and was told to use the spray every four to six hours, or as needed to keep the nasal passages clean and moist and to assist in healing. *Id.* at 12. Wilber asserts that he submitted a refill request for the nasal spray on February 25, 2019, but the request was denied because he had "requested too soon." *Id.* Wilber received a refill on March 3, 2019. *Id.* He believes the request was initially denied to retaliate against him for filing several inmate complaints about health services personnel. *Id.*

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). To state a claim under the Eighth Amendment in connection with inadequate medical care, a plaintiff must allege that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). "A

delay in treatment may show deliberate indifference if it exacerbated [the plaintiff's] injury or unnecessarily prolonged his pain." *Id*. at 777-78.

The Court will allow Wilber to proceed on a deliberate indifference claim against Dr. Manlove based on his allegations that Dr. Manlove delayed evaluating Wilber, ordering diagnostic tests, and referring him to a specialist despite Wilber's persistent complaints of pain and difficulty breathing. Wilber also states a deliberate indifference claim against Dr. Manlove, Jensen, and York based on his allegations that they failed to adequately address his persistent complaints of pain after his injury and before his surgery.

Wilber does not, however, state a deliberate indifference claim against Vick, the nurse who evaluated him immediately after his injury. Wilber asserts that after evaluating him, she gave him ice for the swelling and ibuprofen for the pain. Given the non-emergent nature of Wilber's injury, her response does not demonstrate a "reckless disregard" toward Wilber's health. *See Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999) (holding that a plaintiff must show the defendant "acted with reckless disregard toward the serious need by inaction or woefully inadequate action") (citations omitted).

Nor does Wilber state a claim against Meli, the health services manager. Wilber is dissatisfied with her responses to his requests for information about the delay in ordering x-rays and being sent to a specialist. Her failure to respond to Wilber's questions does not violate the Constitution, and nothing in Wilber's complaint suggests that Meli was responsible for the delays or for decisions regarding his medical treatment. Under §1983, a defendant is liable for damages only if she was personally responsible for the deprivation of a constitutional right, meaning that the deprivation occurred at the defendant's behest or with her knowledge and consent. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019).

5

Further, to the extent Wilber seeks to hold Meli responsible because she was the health services manager, the doctrine of *respondeat superior* cannot be used to hold a supervisor liable for the misconduct of a subordinate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor directs or consents to the misconduct. For example, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" for fear of what they might see. *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992. Wilber fails to state a claim against warden Brian Foster for the same reason: He has not alleged any facts from which the Court can reasonably infer that Foster was personally responsible for the alleged violation of his rights.

Wilber also fails to state a claim in connection with his allegations that his request for nasal spray following his surgery was initially denied. First, Wilber fails to identify who was responsible for denying his request. Second, Wilber alleges that, as a result of the denial he experienced dryness and crusting that "had the potential of prolonging [his] healing and made him more susceptible to infection." Dkt. No. 1 at 12. But, as the Seventh Circuit has repeatedly explained, to the extent a plaintiff seeks damages based on a risk of what could have happened, that risk is not actionable under §1983 without actual injury, and Wilber fails to set forth allegations of a recoverable injury. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). Finally, the fact that Wilber "believes" that his request was initially denied by an unidentified health services employee to retaliate against him for filing inmate complaints about delays in treating his nose injury is too speculative to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The Court also declines to exercise supplemental jurisdiction over the state law claims Wilber seeks to bring. *See* 28 U.S.C. §1367. A district court may exercise supplemental jurisdiction over state law claims that "are so related to claims in the action" over which the Court has "original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). Supplemental jurisdiction is not appropriate merely because the claims are "tangentially related" or share a broad factual background. *See Hernandez v. Dart*, 635 F. Supp. 2d 798, 814 (N.D. Ill. 2009). "Instead, the question is whether the proof necessary for the state claim overlaps with the proof necessary for the federal claim." *Birdo v. Mathis*, Case No. 15-cv-456, 2015 WL 3948150, at *3 (S.D. Ill. June 26, 2015) (citations omitted).

Wilber seeks to assert a negligence claim against a John or Jane Doe employee of the maintenance and recreation departments based on a failure to adequately install, maintain, or inspect the pull-up bar. But the evidence necessary for Wilber to succeed on such a claim will not overlap with the evidence necessary for Wilber to succeed on his federal claims. Further, with regard to the negligence claim Wilber seeks to bring in connection with his medical care, the Court notes that such claims implicate complex issues of Wisconsin law. Wisconsin has a specific chapter in its statutes that govern medical malpractice, together with separate exhaustion procedures. The state also has a strong public policy interest in how medical malpractice and/or negligence cases are resolved. Again, the evidence necessary for Wilber to succeed on a medical negligence claim will not overlap with the evidence necessary for him to succeed on his federal claims. Therefore, Wilber's state law claims will be dismissed without prejudice. Although relief in federal court is foreclosed to Wilber on these state law claims, he may pursue these claims in state court.

**IT IS THEREFORE ORDERED** that Brian Foster, Chrystal Meli, Gwendolyn Vick, and John or Jane Doe are **DISMISSED** based on Wilber's failure to state a claim against them.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Wilber's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Jeffrey Manlove, Ann York, and Mark Jensen.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Manlove, York, and Jensen shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Wilber is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Wilber may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin this <u>27th</u> day of April, 2021.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge